1  WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy Ann Harris, | No. CV-16-01994-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Peggy Ann Harris, which challenges the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, the Court affirms the denial of benefits.

**BACKGROUND**

On July 5, 2012, Ms. Harris filed an application for disability insurance benefits, alleging a disability onset date of May 1, 2012. (Tr. 23.) Her claim was initially denied on January 7, 2013, and it was denied again upon reconsideration on September 6, 2013. (*Id.*) Ms. Harris then filed a written request for a hearing and she testified before ALJ Sheldon P. Zisook on May 22, 2014. (*Id.*) On October 14, 2014, the ALJ issued a decision finding Ms. Harris not disabled. (Tr. 30.)

In evaluating whether Ms. Harris was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 23–24.) At step one, the ALJ

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

found that Ms. Harris had not engaged in substantial gainful activity since May 1, 2012, the alleged onset date. (Tr. 25.) At step two, the ALJ determined that Ms. Harris suffered from paroxysmal supraventricular tachycardia ("PSVT"), which is a severe impairment. (Tr. 25.) At step three, the ALJ determined that Ms. Harris's PSVT did not equal or meet the severity of any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ reached step four and made a determination of Ms. Harris's residual functional capacity ("RFC"),[2] concluding that Ms. Harris could "perform the full range of light work as defined in 20 CFR 404.1567(b)." (Tr. 25–26.) In making this finding, the ALJ found that Ms. Harris's subjective testimony was "not entirely credible." (Tr. 27.) The ALJ gave little to no weight to the treating physicians, Drs. Griffin and Cantor. (Tr. 28.) Instead, he gave great weight to the testimony of the state agency's reviewing physicians. (Tr. 29.)

The Appeals Council declined to review the decision. (Tr. 1–4.) However, in doing so, the Appeals Council noted that it considered two questionnaires that were previously omitted from the ALJ's decision; a spinal impairment questionnaire submitted

---

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by her impairments. *See* S.S.R. 96–8p (July 2, 1996).

- 2 -

by Dr. Michael Steingart and a cardiac impairment questionnaire submitted by Dr. Stephen Cantor. (Tr. 2.) Ms. Harris filed the complaint underlying this action on June 20, 2016, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter is now fully briefed. (Docs. 11, 12.)

**DISCUSSION**

**I.  Standard of Review**

A reviewing federal court will generally only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). However, in certain instances, such as where the Appeals Council considered evidence not previously considered by the ALJ, the record may be supplemented. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

### A. The ALJ Properly Evaluated Ms. Harris's Credibility.

Once a claimant establishes that objective medical evidence illustrates an impairment that could reasonably cause the symptoms alleged, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 2006)). This is the most stringent standard required in Social Security cases. *Id.* To meet it, an ALJ must identify which testimony he considers not credible, and "link that testimony to the particular parts of the record supporting [the ALJ's] non-credibility determination." *Id.* The ALJ's opinion "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (internal quotations and citations omitted).

When determining credibility, an ALJ may consider a variety of factors, including: the treatment the claimant sought and received, the type of medication she takes, the measures she's taken to relieve her pain, and the location, duration, frequency, and intensity of her pain. 20 C.F.R. § 404.1529(c)(3). An ALJ's credibility determination should focus on "the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments" rather than conducting an assessment on "an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." S.S.R. 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016). Additionally, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. The ALJ in this case discredited Ms. Harris's testimony regarding her symptoms because he determined that her testimony was contradicted by the activities she engaged in throughout her disability, she improved throughout the course of a conservative treatment

plan and the objective medical evidence did not indicate a severe disability. (Tr. 27.) For the following reasons, this Court finds that the ALJ did not err in considering these factors to discredit Ms. Harris's testimony.

### i. Activities of Daily Living

An ALJ "may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Therefore, if an activity described by the claimant during her testimony is inconsistent with her alleged limitations that may be grounds for discrediting her testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("If the claimant runs marathons, as an extreme example, an ALJ could reasonably assume that the claimant's pain is not so debilitating as to prevent him from working."). However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016.

In this case, the ALJ properly concluded that Ms. Harris's activities contradicted her alleged limitations. Ms. Harris testified that she was severely limited by her PSVT, becoming "dizzy easily and gets fatigue[d] during the day." (Tr. 26; Tr. 43.) At one point during her hearing, Ms. Harris noted that "simply making a sandwich could raise her blood pressure." (Tr. 26; Tr. 48.)

Despite these limitations, the ALJ noted that Ms. Harris was capable of traveling to Europe during her period of disability to spend a week hiking in Ireland. (Tr. 26.) At her hearing, she claimed that she was forced to stop hiking and swimming for exercise roughly a year prior to the May 2014 hearing. (Tr. 26; Tr. 53.) However, this is inconsistent with her report to her doctor in March of 2014, where she claimed to still be engaging in hiking and swimming for exercise. (Tr. 26; Tr. 888.) These are strenuous outdoor activities, and the ALJ did not err in noting that these activities are beyond the

capabilities of a claimant that allegedly has difficulty making sandwiches or completing basic household tasks without becoming fatigued. The ALJ also noted that in her function report, Ms. Harris claimed that she takes care of her husband,[3] cooks, cleans, does light exercise, shops and otherwise "engage[s] in a somewhat normal level of daily activity and interaction." (Tr. 27; Tr. 212.) While the evidence of Harris's "daily activities may also admit of an interpretation more favorable" to her, the "the ALJ's interpretation was rational, and [this Court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680–81. The ALJ's citations to these instances of inconsistency provided "specific, clear and convincing reasons" for discrediting Ms. Harris's testimony, and therefore he did not err in weighing this consideration. *Garrison*, 759 F.3d at 1015.

### ii. Objective Medical Evidence and Improvement with Conservative Treatment

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Furthermore, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks omitted); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). However, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

---

[3] Ms. Harris's husband suffers from a traumatic brain injury ("TBI"), and Ms. Harris acts as his caregiver to help him "as needed." (Tr. 213.)

In discrediting Ms. Harris's testimony, the ALJ noted that she received "routine, conservative, and non-emergency treatment since the alleged onset date," and obtained marked improvement through those conservative measures. (Tr. 27.) Ms. Harris attempts to characterize this analysis as penalizing her for not seeking more rigorous treatment, but this misconstrues the ALJ's analysis. The ALJ did not assert that Ms. Harris is not disabled because she failed to seek alternative treatment; rather, he asserted that her PSVT symptoms appeared to be controlled through conservative treatment, and therefore her allegations that her condition continued to cause her severe distress are contrary to the record. For example, the ALJ noted that on June 29, 2012, Ms. Harris claimed that she saw a "dramatic improvement in palpitations since changing medications." By her own account, the palpitations she experienced were "reportedly rare and last a maximum of 20 minutes." (Tr. 27; Tr. 470.) The ALJ also referred to Ms. Harris's examinations by Dr. Levinson in August of 2013 and June of 2014. (Tr. 28.) In 2013, Ms. Harris appeared "normal from head to toe," and "although intermittently symptomatic, her situation [did] not appear serious or life threatening." (Tr. 679.) Likewise, her hypertension was deemed "moderately well controlled on [her] current drug regime." (Tr. 679.) In 2014, her cardiac exam "reveal[ed] a regular rate and rhythm without murmur," and "recent Holter monitors and loop recorders show[ed] no significant issues." (Tr. 934–35.) An ALJ is permitted to consider whether the claimant's conditions may be treated and stabilized through conservative means during the credibility analysis, and the ALJ did not err in doing so in this case. *See also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (affirming an ALJ's credibility determination where the ALJ noted that the claimant's doctor "prescribed only conservative treatment in 1986, suggesting a lower level of both pain and functional limitation." (internal quotation omitted)).

In supporting his assertions that Ms. Harris's PSVT appeared to be controlled through conservative treatment, the ALJ also cited to the lack of objective medical evidence to support the extent of her alleged disability. First, he referenced medical

records reflecting a thirty-day monitor Ms. Harris wore in September of 2012, which showed supraventricular tachycardia to a maximum of 150 beats and did not show any atrial fibrillation. (Tr. 27; Tr. 621.) He then noted that in February of 2013, a loop monitor interrogation "revealed no episodes of tachycardia." (Tr. 27; Tr. 716.) Furthermore, an echocardiogram in 2014 was similarly uneventful despite Ms. Harris's continued reports of "[o]ngoing rate and rhythm control." (Tr. 27; Tr. 906.) The lack of objective medical evidence was one of numerous factors he relied on in discrediting Ms. Harris's testimony, and he specifically cited to the above tests in doing so. (Tr. 27.) Therefore, his analysis of the medical evidence was not "vague" as Ms. Harris asserts, and he did not err in considering the objective medical evidence while weighing the credibility of her testimony.

Additionally, the findings of the ALJ are further supported by the introduction of Dr. Cantor's questionnaire from January of 2015. Although this questionnaire was not available to the ALJ at the time of hearing, and thus he did not consider it in his decision, it became part of the record when the Appeals Council considered it. *See Brewes*, 682 F.3d at 1163. In the questionnaire, Dr. Cantor opined that Ms. Harris could be classified as Class I in New York Heart Association's ("NYHA") system. (Tr. 1037.) A patient that is classified as "Class I" under NYHA's system suffers "[n]o limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea (shortness of breath)." *Classes of Heart Failure*, www.heart.org, http://www.heart.org/ HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-ofHeartFailure_UCM _306328_Article.jsp#.WRTlhlXyuUk (last visited May 11, 2017). Therefore, this questionnaire provides further support for the ALJ's determination that the objective medical evidence indicated that Ms. Harris's PSVT was controlled through conservative treatment throughout the period of alleged disability.

/ / /

/ / /

/ / /

### B. The ALJ Did Not Commit Prejudicial Error by Rejecting the Opinions of the Treating Physicians.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). If the treating physician's opinion is contradicted by another doctor, the Commissioner cannot reject the treating physician's opinion unless he provides "specific and legitimate reasons supported by substantial evidence in the record." *Id.* (internal quotations omitted). The treating physician's opinions in this case were contradicted by the state agency review physicians, who opined that Ms. Harris is subject to "light limitations" due to her health conditions. (Tr. 29.) Therefore, the ALJ needed to provide specific and legitimate reasons for disregarding Ms. Harris's treating physicians. For the following reasons, this Court finds that although the ALJ did err in one of his rationales, he did not commit prejudicial error during this analysis, and thus his opinion is affirmed.[4]

### i. The Objective Medical Evidence

The ALJ justified disregarding the opinions of treating physicians Dr. Cantor and Dr. Griffin because their opinions were contrary to the objective medical evidence in the record. An ALJ may properly reject the opinion of a treating physician if it is inconsistent with the objective medical evidence of the record. *See Batson*, 359 F.3d at 1195 ("Further, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings"

---

[4] Ms. Harris contends that the ALJ also erred by "dismissing the medical opinions from the treating sources on the basis that the issue of disability is 'reserved to the Commissioner.' " (Doc. 11 at 14.) This is not what the ALJ did; rather, the ALJ stated that he would not give that statement "special significance" or "controlling weight" because it reflects an "opinion on an issue reserved to the Commissioner." (Tr. 28.) Such a statement is permissible, as an opinion that an individual is disabled under the statutory definition of disability is not a medical opinion. *See* 20 C.F.R. § 404.1527(d)(1) (including opinions that a claimant is disabled as one example of an opinion that is not a medical opinion, because the Commissioner is "responsible for making the determination or decision that [the claimant] meet[s] the statutory definition of disability.").

(citation omitted)). In making this determination, the ALJ cited to the objective medical testing referenced above; the thirty-day heart monitor observed in 2012, the loop monitor interrogation in 2013 "that revealed no episodes of tachycardia," and the normal echocardiogram from 2014. (Tr. 27.) The ALJ also reiterated that the treating physicians' opinions were inconsistent with the medical evidence that demonstrated Ms. Harris improved while undergoing conservative treatment and medication.[5] (Tr. 29.) The ALJ's citations to these specific instances of inconsistency between the treating physicians' opinions and the medical record provided substantial evidence to support the ALJ's determination to discredit the opinions of the treating physicians, and thus the ALJ did not err in doing so.[6]

### ii. Contradictions with Ms. Harris's Activities

The ALJ discredited both physicians' medical opinions on the basis that they were "inconsistent with the claimant's admitted activities of daily living." (Tr. 29.) ALJs may discredit a treating physician's opinion to the extent that it contradicts the daily activities of the claimant. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999) (upholding an ALJ's rejection of a treating physician based, in part, on the

---

[5] Ms. Harris objects to this reasoning for the same reasons that she objects to the ALJ considering her improvement throughout her conservative treatment in analyzing her credibility. However, as explained earlier, this argument mischaracterizes the ALJ's analysis. His reasoning does not punish her for failing to seek more extreme treatment; his reasoning is based on the assumption that if her condition can be managed through conservative treatment, it is likely not as debilitating as alleged. *See generally Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[6] Once again, although the ALJ did not have access to it at the time he wrote his opinion, Dr. Cantor's subsequent questionnaire supports this finding. The questionnaire introduced to the Appeals Council is dated to apply from May 29, 2012 until January 1, 2015. These dates reflect a more recent medical opinion than the one cited by Ms. Harris, which indicated that Dr. Cantor thought she was disabled due to her condition. (Tr. 712; 625.) The more recent questionnaire reflects that Dr. Cantor does not believe that Ms. Harris is disabled; rather, this questionnaire indicated that Ms. Harris could sit for eight or more hours a day without any limitation, and that her symptoms would require her to be absent from work "less than one day a month." (Tr. 1039, 1041.) The introduction of this questionnaire from Dr. Cantor presents further inconsistencies within his findings, and presents additional support for discounting his opinion and that of Dr. Griffin.

inconsistencies between the treating psychologist's "marked limitations" and the claimant's daily activities).

As discussed above, Ms. Harris admitted that she engages in hiking and swimming to exercise, and she was capable of traveling to Ireland during the period of alleged disability to engage in a week of extensive hiking. She also takes an active role in maintaining her home and serves as the primary caretaker for her husband, who suffers from a traumatic brain injury. (Tr. 213.) These activities do not align with Dr. Cantor's opinion, which claims that Ms. Harris is "only able to stand or walk for a total of one hour" during an eight-hour period. (Tr. 712.) Likewise, such activities do not align with Dr. Griffin's assessment, which claims that Ms. Harris cannot stand or walk for a collective total of more than two hours in an eight-hour period. (Tr. 711.) Ms. Harris's exercise activities and active lifestyle also challenge Drs. Griffin and Cantor's assertions that Ms. Harris's health conditions prelude her ability to "meet the demands of full time work." (Tr. 711.) Therefore, the ALJ did not err in weighing this factor to discredit the doctors' opinions.

### iii. Subjective Complaints

A physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). However, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). It is also error for an ALJ to dismiss a summary of a treating physician's opinion purely for being contained in a questionnaire if it is based on the treating physician's "significant experience" with the claimant and "supported by numerous records." *Garrison*, 759 F.3d at 1013.

The ALJ discredited the treating physicians opinions in part because he found that their treatment notes were a summary of Ms. Harris's "subjective complaints, diagnoses, and treatment, but they failed to provide objective clinical or diagnostic findings to support the functional assessment." (Tr. 29.) The ALJ failed to note how the treatment notes reflected this; Dr. Cantor's questionnaire noted that the clinical evidence reflected that Ms. Harris experienced fatigue, heart palpitations, and weakness. (Tr. 625.) Likewise, Dr. Griffin's questionnaire reflected that he based his findings on diagnostic cardiac testing. (Tr. 544.) The ALJ noted that these questionnaires were conclusory, and they are admittedly vague, containing mostly one-word explanations. (Tr. 29.) However, both of these doctors based these questionnaires on their "significant experience" with Ms. Harris after years of treating her on a regular basis. For example, Dr. Griffin treated Ms. Harris for the first time in 2002, (Tr. 543). While Dr. Cantor's history with Ms. Harris is far shorter, he appears to have seen her once a month since 2012, giving rise to numerous records to support his findings. (Tr. 712.) In a situation such as this, the ALJ cannot dismiss the treating physicians' opinions due to the form of their presentation without providing substantial evidence for doing so. The ALJ erred by failing to provide support for his assertion that the doctors opinions' amounted to a summary of Ms. Harris's complaints beyond his critique of the form of their functional assessments. (Tr. 29.)

Once it has been determined that an ALJ made an error during the review of a claimant's file, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error is not prejudicial if "the ALJ's decision remains legally valid, despite such error.") Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The ALJ's error here was not prejudicial, and thus there is no need to remand the case. The two preceding sections outline two other "specific and legitimate reasons that are supported by substantial evidence in the record" for dismissing the findings of

Drs. Griffin and Cantor, and thus the ALJ's decision to deny benefits remains legally valid. *Lester*, 81 F.3d at 831. Furthermore, the additional evidence considered by the Appeals Council also indicates that this error was not prejudicial, as Dr. Cantor's more recent questionnaire indicates that Ms. Harris's PSVT only arises to the level of a Class 1 on the NYHA classification system. Dr. Cantor's more recent questionnaire also introduces additional inconsistencies within Dr. Cantor's medical opinion that add further support for the ALJ's decision to discredit his assessment and that of Dr. Griffin. (Tr. 1037–1041.) Therefore, despite the ALJ's error, there is no need to remand this case.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 15th day of May, 2017.

Honorable G. Murray Snow
United States District Judge